Taet, J.,
concurring. In my opinion, the strongest arguments, advanced in these cases against validity of the Sunday closing law, were those based upon the decisions of this court in Olds v. Klotz, 131 Ohio St., 447, 3 N. E. (2d), 371, and City of Cincinnati v. Correll, 141 Ohio St., 535, 49 N. E. (2d), 412. To paraphrase what was said by Bell, J., in his opinion in the latter case (page 542), almost every statement made in declaring invalid the legislation involved in those cases would be equally applicable in declaring the Sunday closing law invalid.
The legislation in the Klotz case made “it unlawful to maintain and operate a retail food and grocery establishment, open to the public for business except as between the hours of 7 a. m. and 7:30 p. m. on Monday, Tuesday, Wednesday, Thursday and Friday” but did permit operations from 7 a. m. to 9 p. m. on Saturdays and any day preceding a holiday (131 Ohio St., 450). The legislation in the Correll case made “it unlawful * * * to permit a barber shop to be open for * * * business * * * other than upon the days of the week and the hours of the day set forth” which were quite similar to those specified in the Klotz legislation.
*529 It may be argued that Section 34 of Article II of the Ohio Constitution, which states that “laws may be passed fixing and regulating the hours of labor,” will support the Sunday closing law although it would not support the ordinances involved in the Klotz and Correll cases. See dissenting opinion of Jones, J., in Wilson v. City of Zanesville, 130 Ohio St., 286, 199 N. E., 187. However, paragraph one of the syllabus in the Klote case specifically states that the ordinance there involved was “not a valid exercise of the police power” and was “in contravention of the due process clause of the Fourteenth Amendment to the federal Constitution.” Hence, this distinction of the Klote case cannot be adopted without overruling in part paragraph one of its syllabus. Also, the decision in the Correll case, when read in the light of its syllabus, clearly indicates a conclusion by the majority of the court in that case that the legislation there involved was invalid because it bore no “real and substantial relation to the health, safety, morals or general welfare of the public. ’ ’
Legislation, requiring the closing of a “place for transaction of business” during the daytime, as does the Sunday closing law, would quite clearly appear to have a less “real” or “substantial relation to the health, safety, morals or general welfare of the public” than would legislation requiring such a closing during the nighttime, as did the ordinances in the Klotz and Correll cases.
However, probably the real distinction between the holdings of this court in the Klotz and Correll cases and its holdings in the instant cases is the extent of the “closing” required by the ordinances involved in those cases as compared with the extent of the closing required under the Sunday closing law. Under those ordinances, the establishments involved had to be closed not only on Sunday, as under the Sunday closing law, but also during a very substantial number of the hours of each of the other days of the week. In other words, the ordinances went much farther in providing for what is referred to in the quotation in the majority opinion from Minshall, J., as “periods of rest” than did the Sunday closing law. Thus, although a legislative provision for “periods of rest” may have some “real and substantial relation to the health, safety, morals or general welfare of the public” and hence represent a valid exercise of *530 the police power, there are limitations beyond which it cannot go in providing for such “periods of rest” without becoming unreasonable and hence an invalid exercise of the police power.