YAJNIK ET AL., APPELLEES, *v.* AKRON DEPARTMENT
OF HEALTH, HOUSING DIVISION, APPELLANT.

[Cite as *Yajnik v. Akron Dept. of Health, Hous. Div.*, 101 Ohio St.3d 106, 2004-Ohio-357.]

(No. 2002–1488—Submitted June 4, 2003—Decided February 11, 2004.)

MOYER, C.J.

{¶ 1} The issue presented in this case is whether Akron Codified Ordinances ("A.C.O.") 150.40(A)(2) as applied to Ashvin and Shobhana Yajnik violates the Due Process Clause of the Ohio Constitution. We hold that the Yajniks have not satisfied their burden to prove that the law is unconstitutional beyond a reasonable doubt.

I

{¶ 2} The Yajniks own rental units with approximately 50 different addresses in the city of Akron. On September 16, 1997, the Yajniks were convicted of violating a misdemeanor provision of the Akron Environmental Health Housing Code. The record does not indicate the nature of the violation. As a result of the conviction, the Akron Department of Health required the Yajniks to obtain semiannual inspections of all of their rental properties pursuant to A.C.O. 150.40.

{¶ 3} On January 14, 2000, the Akron Health Department issued the Yajniks an order to comply, which required the mandatory inspection of all of their rental properties for up to four years. The health department served the Yajniks with notice of a hearing for the purpose of scheduling the semiannual inspections and for the payment of the required inspection fees. Relying on the fee schedule in A.C.O. 150.40(F), the Yajniks estimated that the total cost for the semiannual inspections would be $42,000.

{¶ 4} The Yajniks appealed to the Housing Appeals Board ("the board"), alleging statutory construction issues and violations of various provisions of the Ohio and United States Constitutions. After conducting a hearing, the board denied the appeal. The Yajniks appealed from the judgment of the board to the Summit County Court of Common Pleas, asserting that A.C.O. 150.40(A)(2) violates the (1) the Due Process and Equal Protection Clauses of the Ohio and United States Constitutions, (2) the Fourth Amendment to the United States Constitution, (3) the Double Jeopardy Clauses of the Ohio and United States Constitutions, and (4) the Retroactivity Clause of the Ohio Constitution and the Ex Post Facto Clause of the United States Constitution. The court of common

pleas reversed the decision of the board and concluded that the application of A.C.O. 150.40(A)(2) to the Yajniks violated their right to substantive due process under the Ohio Constitution.

{¶ 5} The city of Akron appealed to the Ninth District Court of Appeals, arguing that the Yajniks had not satisfied their burden to prove that A.C.O. 150.40(A)(2) as applied to them is unconstitutional. In a split decision, the Ninth District affirmed the judgment of the trial court and held that application of A.C.O. 150.40(A)(2) to the Yajniks violated their rights under the Ohio Constitution.

{¶ 6} The cause is now before this court upon the allowance of a discretionary appeal.

## II

{¶ 7} The sole issue in this appeal is whether A.C.O. 150.40(A)(2) as applied to the Yajniks violates the Due Process Clause in Section 16, Article I of the Ohio Constitution. Our analysis of this issue begins with a review of A.C.O. Chapter 150.

## A

{¶ 8} In November 1996, the Akron City Council amended its environmental health housing code and declared an emergency because "dwelling premises in the City [were] deteriorated due to a lack of maintenance and [violations] of the City Health, Safety, and Sanitation Code, Litter Code, Housing Code, and Zoning Code * * *." Preamble, Akron Ordinance No. 769–1996. The condition of these premises, the City Council declared, constituted "a threat to new development, the housing stock, property values and [to] the public health, safety, welfare, and aesthetics." Id. Concluding that "the majority of these dwelling premises in the City that are deteriorated * * * are rental units," the City Council determined that "a more proactive means of Code Enforcement" was necessary. Id.

{¶ 9} Against this backdrop, the city council passed Ordinance No. 769–1996, codified at Title 15, Chapter 150 of the A.C.O., "establishing minimum standards for the maintenance and condition of dwelling premises in the city, establishing a mandatory rental unit registration program, establishing a mandatory rental unit mandatory inspection program, and directing City departments to take action as is necessary to implement the programs." Id. The Akron City Council implemented the mandatory inspection program in A.C.O. 150.40(A), which provides:

{¶ 10} "(A) The owner or operator of a premises with a rental unit shall have the interior and exterior of the premises, its structures and its rental units inspected semi-annually, for a minimum of four years, to determine compliance with the Health, Safety and Sanitation Code, Litter Code, Housing Code, and Zoning Code, under the following circumstances:

{¶ 11} "* * *

{¶ 12} "(2) If the owner or operator has been convicted of a violation of this chapter * * *."

{¶ 13} The Akron City Council thus determined that property owners who neglect their rental property—as evinced by a housing-code conviction—are subject to semiannual inspections of their rental properties. It is this legislative decision, adopted as a more proactive means of enforcement to address the rental property emergency in the city, that forms the basis of the instant appeal.

B

{¶ 14} In determining the constitutionality of a legislative act, this court must first determine whether the party is challenging the act on its face or as applied to a particular set of facts. *Belden v. Union Cent. Life Ins. Co.* (1944), 143 Ohio St. 329, 340, 28 O.O. 295, 55 N.E.2d 629. In an "as applied" challenge, the party challenging the constitutionality of the statute contends that the "application of the statute in the particular context in which he has acted, or in which he proposes to act, would be unconstitutional. The practical effect of holding a statute unconstitutional 'as applied' is to prevent its future application in a similar context, but not to render it utterly inoperative." *Ada v. Guam Soc. of Obstetricians & Gynecologists* (1992), 506 U.S. 1011, 113 S.Ct. 633, 121 L.Ed.2d 564 (Scalia, J., dissenting).

{¶ 15} The Yajniks assert that A.C.O. 150.40(A)(2) is unconstitutional not on its face, but as applied to the particular facts in the instant matter. Specifically, the Yajniks argue that application of A.C.O. 1540.40(A)(2) to them violates their substantive due process rights because there is no reasonable relationship between a single conviction for a housing code violation and the mandatory inspection of their numerous other rental properties. The trial court concluded, and the court of appeals agreed, that "given the number of properties owned by [the Yajniks] and the fact that only one property led to a conviction for a substantive violation, * * * the mandatory semiannual inspection of all properties owned by them is unreasonable and arbitrary." We disagree.

{¶ 16} The ability to invalidate legislation is a power to be exercised only with great caution and in the clearest of cases. That power, therefore, is circum-

scribed by the rule that laws are entitled to a strong presumption of constitutionality and that a party challenging the constitutionality of a law bears the burden of proving that the law is unconstitutional beyond a reasonable doubt. *State ex rel. Dickman v. Defenbacher* (1955), 164 Ohio St. 142, 57 O.O. 134, 128 N.E.2d 59, paragraph one of the syllabus. Furthermore, a municipality has wide discretion in exercising its power to legislate for the general welfare of its citizens; hence, an enactment comports with due process " 'if it bears a real and substantial relation to the public health, safety, morals or general welfare of the public and if it is not unreasonable or arbitrary.' " *Desenco, Inc. v. Akron* (1999), 84 Ohio St.3d 535, 545, 706 N.E.2d 323, quoting *Benjamin v. Columbus* (1957), 167 Ohio St. 103, 110, 4 O.O.2d 113, 146 N.E.2d 854.

{¶ 17} Applying these principles to the instant case, we conclude that the Yajniks have not satisfied their burden to prove that A.C.O. 150.40(A)(2) as applied is unconstitutional beyond a reasonable doubt. This conclusion flows from one undisputed fact: The circumstances of the conviction that led to the mandatory inspections are not part of the record. The Yajniks therefore urge us to hold that the mandatory inspections at issue violate the Due Process Clause of the Ohio Constitution although we do not know the nature of the code violation. Such an approach would require us to hypothesize about possible violations and to then determine that the resulting inspections violate the Due Process Clause.

{¶ 18} Notwithstanding the inherent difficulty in attempting to account for all of the possible circumstances that would constitute violations under A.C.O. Chapter 150, such an approach is fraught with a more fundamental problem— that is, the reasonableness and arbitrariness of a mandatory inspection under A.C.O. 150.40(A)(2) are inextricably related to the violation that gives rise to that inspection. If, for example, an owner or operator violates A.C.O. 150.30(A), which requires the registration of all rental units, then the mandatory inspection of other-owned units would likely be unreasonable and arbitrary—and thus violate the Due Process Clause of the Ohio Constitution—because the inspections would not disclose whether other units were also not registered. If, by contrast, an owner violates A.C.O. 150.08(I) and/or (J), which provide that "[e]very multiple dwelling unit shall be equipped with audible smoke detector devices" and "fire extinguishers of a minimum classification," then the mandatory inspections of other-owned units would at least arguably be reasonable and not arbitrary—and indeed bear a real and substantial relation to the public health, safety, and general welfare—under the Due Process Clause.

{¶ 19} Absent evidence of the underlying violation, therefore, this court lacks the necessary information to determine whether A.C.O. 150.40(A)(2) is constitutional under the Due Process Clause of the Ohio Constitution in the instant case. Accordingly, the Yajniks have not satisfied their burden to prove that the law is

unconstitutional beyond a reasonable doubt. We therefore reverse the judgment of the court of appeals and remand the matter to that court to address the Yajniks' remaining constitutional challenges.

Judgment reversed
and cause remanded.

RESNICK, F.E. SWEENEY and O'CONNOR, JJ., concur.

PFEIFER, LUNDBERG STRATTON and O'DONNELL, JJ., dissent.

---

**O'DONNELL, J., dissenting.**

{¶ 20} I respectfully dissent because in my view the Yajniks satisfied their burden to prove that A.C.O. 150.40(A)(2) as applied to them is unconstitutional.

{¶ 21} Regarding the reasonableness requirement of the due process test, in *Froelich v. Cleveland* (1919), 99 Ohio St. 376, 391, 124 N.E. 212, this court stated, "It must be remembered that neither the state in the passage of general laws, nor the municipality in the passage of local laws, may make any regulations which are unreasonable. The means adopted must be suitable to the ends in view, * * * and not unduly oppressive upon individuals * * * and must not interfere with private rights beyond the necessities of the situation."

{¶ 22} In *Wilson v. Cincinnati* (1976), 46 Ohio St.2d 138, 142, 75 O.O.2d 190, 346 N.E.2d 666, for example, we held that a program for a point-of-sale housing inspection met the reasonableness standard, although we held it unconstitutional on other grounds. In *Rental Property Owners Assn. of Kent Cty. v. Grand Rapids* (1997), 455 Mich. 246, 566 N.W.2d 514, the Michigan Supreme Court considered an ordinance that authorized Grand Rapids to declare rental property a public nuisance when used repeatedly for illegal drugs or prostitution and to padlock it for one year. Evaluating the reasonableness of the ordinance, the court held that it was neither unfair nor unjust for the city to impose the burden of abating the nuisances upon the individual owners and concluded that the ordinance constituted a valid exercise of the police power. Id. at 272, 566 N.W.2d 514.

{¶ 23} Under Akron's scheme of mandatory inspections, the Yajniks face inspections twice a year for a period of four years for all 50 properties they own and must pay more than $40,000 in inspection fees, even though the city convicted them of violating the housing code regarding only one property. I recognize that the Yajniks bear the burden to prove the law's unconstitutionality; however, I do not share the majority's view that the Yajniks' failure to identify the nature of the code violation is fatal to their claim. The record here reveals that their 50 properties are scattered throughout the city of Akron. Other than common

ownership, these properties share no characteristics demonstrating the likelihood of any existing or future code violations. Unlike in *Wilson* or *Rental Property Owners,* supra, where the respective city councils enacted legislation to meet specific objectives, Akron's inspection scheme transcends the city's need to rectify noncompliance found at the Yajniks' one offending property. In my view, the 400 inspections foisted upon the Yajniks for their single conviction of one code violation at one property unreasonably interfere with their property rights "beyond the necessities of the situation." See *Froelich.* Accordingly, I would hold that this ordinance, as applied to the Yajniks, fails to satisfy the reasonableness requirement under the due process test and therefore is not a valid exercise of Akron's police power.

PFEIFER and LUNDBERG STRATTON, JJ., concur in foregoing dissenting opinion.

---

Dean Konstand, for appellees.

Max Rothal, Akron Law Director, and John R. York, Assistant Law Director, for appellant.

Byron & Byron, Barry M. Byron and Stephen L. Byron; and John Gotherman, urging reversal for amicus curiae the Ohio Municipal League.