**WYMSYLO, DIR., APPELLEE, *v*. BARTEC, INC., D.B.A. ZENO'S VICTORIAN VILLAGE, ET AL., APPELLANTS; DEWINE, ATTY. GEN., APPELLEE.**

[Cite as *Wymsylo v. Bartec, Inc.,* **132 Ohio St.3d 167, 2012-Ohio-2187.**]

*R.C. Chapter 3734—Smoke Free Workplace Act—Legislation requiring proprietors of public places of employment to prevent smoking on premises is valid exercise of state's police power—State's enforcement of legislation against property owners does not constitute regulatory taking without just compensation.*

(No. 2011-0019—Submitted October 19, 2011—Decided May 23, 2012.)

APPEAL from the Court of Appeals for Franklin County,

No. 10AP-173, 2010-Ohio-5558.

_____

**SYLLABUS OF THE COURT**

R.C. Chapter 3794, the Smoke Free Workplace Act, is a valid exercise of the state's police power by Ohio voters and does not amount to a regulatory taking.

_____

**LANZINGER, J.**

{¶ 1} In this case, we are asked to address several constitutional challenges to the Smoke Free Workplace Act, R.C. Chapter 3794.

I. Factual Background

{¶ 2} On November 7, 2006, Ohio voters passed a ballot initiative to enact the Smoke Free Workplace Act ("the Smoke Free Act"). Codified in R.C. Chapter 3794, the act became effective on December 7, 2006. The Ohio Department of Health ("ODH") and its designees are charged with the enforcement of the Smoke Free Act. R.C. 3794.07. Subject to certain

exemptions, proprietors of public places of employment are not to permit smoking in their establishments. R.C. 3794.02(A). Zeno's Victorian Village is a privately owned bar in Columbus that has been cited for violations of the act on multiple occasions.

**{¶ 3}** ODH's director filed a complaint seeking preliminary and permanent injunctive relief ordering Bartec, Inc., d.b.a. Zeno's Victorian Village, and Richard Allen, the CEO and sole shareholder of Bartec, Inc. (collectively, "appellants") to comply with the Smoke Free Act and to pay all outstanding fines. Appellants answered the complaint and admitted receiving nine notices of violations after investigations had been completed and that a tenth investigation was pending. They raised the affirmative defenses that R.C. Chapter 3794 is unconstitutional both on its face and as applied to them and that R.C. Chapter 3794 has been enforced in an unconstitutional manner and in a manner that is inconsistent with its plain language. Appellants also filed a counterclaim for declaratory and injunctive relief against ODH and a cross-claim against the Ohio Attorney General, alleging that the Smoke Free Act operates in violation of appellants' constitutional rights under the Ohio Constitution, Article I, Sections 1, 16, 19, and 20, that the act is invalid as applied to them, and that ODH engaged in rulemaking that exceeds its authority.[1]

---

1. The actual relief sought by appellants with respect to their declaratory judgment is somewhat unclear because the answer/counterclaim/cross-claim filed in the record is missing two pages. The only part of the request for relief that appears in full is a request for a preliminary and permanent injunction prohibiting

1. Any further unconstitutional or otherwise unlawful enforcement of R.C. 3794 and OAC 3701.
2. Any further Ohio Attorney General collection efforts against Zeno's and similarly situated proprietors that have been, are, and continue to be issued under an unconstitutional and unlawful framework.
3. Current Ohio Attorney General collection efforts which, if successful, will effectuate the permanent cessation of Zeno's as a going business concern.

**{¶ 4}** The trial court consolidated the parties' requests for preliminary injunction with the trial on the merits. At trial, evidence was presented that appellants had been cited ten times for violating the Smoke Free Act between July 2007 and September 2009. Eight of the ten violations were not appealed. The two violations that were appealed were upheld by the Franklin County Court of Common Pleas. The trial court, however, found that ODH has implemented a policy of strict liability for violations of the Smoke Free Act by issuing fines regardless of whether the appellants were actually "permitting" smoking to occur at Zeno's. The court observed, "Property owners, however, have no control over whether someone rips out a cigarette and lights up. Again, the Department of Health's interpretation of the Smoke Free Act makes property owners liable for the actions of third parties upon which the property owner has little to no control." The trial court held that this ODH policy of imposing liability without fault was stricter than R.C. 3794.02 allowed and that ODH had exceeded its authority in implementing it. The trial court denied ODH's request for a permanent injunction and vacated the ten citations.

**{¶ 5}** ODH appealed to the Tenth District Court of Appeals, raising three assignments of error. The first alleged that the trial court failed to apply the plain language of the Smoke Free Act. The second alleged that the trial court erred

---

But a fragment of another request for what appears to be declaratory relief reads as follows:

> 3. Relevant policies of the Ohio Department of Health constitute unlawful agency policymaking.
> 4. The Ohio Department of Health's interpretations and applications of relevant provisions of R.C. [Chapter] 3794 and OAC [Chapter] 3701 are in contravention of the language of the statute drafted and handed down by Ohio's legislative branch of government.
> 5. Ohio Attorney General's Office collection efforts effectuate a taking of property without just compensation.

From appellants' trial brief, it appears that they were requesting that R.C. Chapter 3794 be declared unconstitutional as applied to them, that the citations already issued be invalidated, and that future enforcement against them be enjoined.

when it held that ODH had engaged in unlawful rulemaking. The third asserted that the trial court abused its discretion in denying ODH's complaint for injunction. Appellants filed a cross-appeal, arguing that they were entitled to declaratory and injunctive relief to prohibit further unconstitutional or otherwise unlawful enforcement of R.C. Chapter 3794 and to prohibit the Ohio Attorney General from attempting to collect the outstanding fines.

{¶ 6} The Tenth District reversed the trial court's judgment. *Jackson v. Bartec, Inc.*, 10th Dist. No. 10AP-173, 2010-Ohio-5558. The court of appeals examined R.C. 3794.02 and determined that the plain language of the statute and related Administrative Code sections required proprietors covered by the Smoke Free Act to assume some level of responsibility for conduct occurring on their premises. *Id*. at ¶ 19. The court of appeals determined that appellants were challenging ODH's method of enforcement as applied and that appellants were therefore required to develop a factual record so that their challenge could be fully considered on appeal. By not pursuing an administrative hearing and failing to develop the necessary record, appellants had waived any error. *Id*. at ¶ 24. Because the ten orders finding violations of the Smoke Free Act had become final orders, the court of appeals held that the trial court should not have heard appellants' collateral attack on the enforcement issue and thus erred as a matter of law in vacating the violations. *Id*. at ¶ 25. With respect to appellants' argument that the Smoke Free Act is unconstitutional on its face, the appellate court relied on its previous decision in *Deer Park Inn v. Ohio Dept. of Health*, 185 Ohio App.3d 524, 2009-Ohio-6836, 924 N.E.2d 898, to hold that the act is constitutional.

{¶ 7} After resolving the constitutional issues, the Tenth District addressed whether ODH was entitled to a permanent injunction. The court stated,

On this record, the evidence is overwhelming that Bartec repeatedly and intentionally violated the Smoke Free Act, failed to comply with its provisions as R.C. 3794.09(D) requires, and in so doing exposed patrons and employees to the very harm the statute is designed to prevent. Due to the hearing the court conducted and the evidence adduced as a result of the hearing, the trial court could reach no other conclusion than that ODH is entitled to the statutory injunction it requested.

*Id*. at ¶ 33.

{¶ 8}   Based on its resolutions of ODH's assignments of error, the Tenth District overruled appellants' cross-assignments of error as an impermissible collateral attack on the final orders of violation.

{¶ 9}   We accepted appellants' appeal to this court on the following three propositions of law:

{¶ 10} 1.   "The Health Department's method of enforcing the smoking ban violates separation of powers, and must be discontinued."

{¶ 11} 2.   "Inclusion of bars as proprietors subject to R.C. [Chapter] 3794 exceeds the outer limits of the state police power, and unreasonably extinguishes property rights."

{¶ 12} 3.   "Ohio's declaratory judgment statute enables previously-cited Ohioans to challenge the constitutionality of a statute or rule."

{¶ 13} Because appellants failed to exhaust their administrative remedies and cannot use declaratory judgment to vacate final orders, we affirm the judgment of the court of appeals with respect to the ten earlier violations. We also hold that the Smoke Free Act is a valid exercise of the state's police power and does not constitute a taking.

## II. Legal Analysis

{¶ 14} R.C. 3794.04 expresses the purpose of the Smoke Free Act passed by Ohio voters.

> Because medical studies have conclusively shown that exposure to secondhand smoke from tobacco causes illness and disease, including lung cancer, heart disease, and respiratory illness, smoking in the workplace is a statewide concern and, therefore, it is in the best interests of public health that smoking of tobacco products be prohibited in public places and places of employment and that there be a uniform statewide minimum standard to protect workers and the public from the health hazards associated with exposure to secondhand smoke from tobacco.

> The provisions of this chapter shall be liberally construed so as to further its purposes of protecting public health and the health of employees and shall prevail over any less restrictive state or local laws or regulations. Nothing in this chapter shall be construed to permit smoking where it is otherwise restricted by other laws or regulations.

{¶ 15} The act also provides that "[n]o proprietor[2] of a public place[3] or place of employment[4] * * * shall permit smoking in the public place or place of employment * * *." (Footnotes added.) R.C. 3794.02(A). Another section states,

---

2. " 'Proprietor' means an employer, owner, manager, operator, liquor permit holder, or person in charge or control of a public place or place of employment." R.C. 3794.01(G).

3. " 'Public place' means an enclosed area to which the public is invited or in which the public is permitted and that is not a private residence." R.C. 3794.01(B).

> No person shall refuse to immediately discontinue smoking in a public place, place of employment, or establishment, facility or outdoor area declared nonsmoking [under this chapter] when requested to do so by the proprietor or any employee of an employer of the public place, place of employment or establishment, facility or outdoor area.

R.C. 3794.02(D). Proprietors of public places and places of employment are required to remove all ashtrays and receptacles used for disposing of smoking materials and to post at every entrance "no smoking" signs, which shall be "clearly legible to a person of normal vision throughout the areas they are intended to mark." R.C. 3794.06. Only private residences and certain family-owned and -operated places of employment, retail tobacco shops, outdoor patios, private clubs, and designated smoking rooms in hotels and nursing homes are exempt from the reach of the act. R.C. 3794.03.

{¶ 16} According to the rules promulgated by ODH pursuant to R.C. 3794.04, once a report of violation is received, ODH has two alternatives. It may dismiss the report if, after construing the allegations as true, it determines that the report is frivolous, was not made in good faith, or is too old to be reasonably investigated. Ohio Adm.Code 3701-52-08(C). If it concludes that the report may have merit, ODH must issue to a proprietor a written notice and copy of the report of violation and allow for written statements or evidence to contest the report. Ohio Adm.Code 3701-52-08(D). After the written notice is issued, ODH must

---

4. " 'Place of employment' means an enclosed area under the direct or indirect control of an employer that the employer's employees use for work or any other purpose, including but not limited to, offices, meeting rooms, sales, production and storage areas, restrooms, stairways, hallways, warehouses, garages, and vehicles. An enclosed area as described herein is a place of employment without regard to the time of day or the presence of employees." R.C. 3794.01(C).

investigate. Ohio Adm.Code 3701-52-08(D)(2). Upon finding a violation, ODH must provide a proprietor with either a letter of warning if there has been no finding of violation within the previous two years, or a written proposed finding of violation and a proposed civil fine. Ohio Adm.Code 3701-52-08(F). The fine per day for a violation of R.C. 3794.02(A) shall be not less than $100 and not more than $2,500. R.C. 3794.07(B). The fine shall be doubled for intentional violations. *Id.*

{¶ 17} A proprietor who receives a proposed finding of violation and proposed civil fine may request an administrative review to present its case and to confront and cross-examine adverse witnesses. Ohio Adm.Code 3701-52-08(F)(2). The hearing officer must prepare a report and recommendation, including findings of fact and conclusions of law, to which objections may be filed. ODH is required to approve, modify, or disapprove the report. *Id.* An affected proprietor may appeal a final ODH decision to the Franklin County Common Pleas Court pursuant to R.C. 119.12. R.C. 3794.09(C).

*A. Scope of Appeal*

{¶ 18} Before addressing the merits of appellants' appeal, we must determine which issues are properly before this court. The first two propositions of law assert that ODH's method of enforcing the Smoke Free Act violates the separation-of-powers doctrine, exceeds the state's police power, and constitutes a taking of property. The third proposition of law addresses the denial of appellants' request for declaratory judgment.

{¶ 19} With regard to the first two propositions, the Tenth District Court of Appeals concluded that these arguments were as-applied constitutional challenges that should have been raised at the administrative level. 2010-Ohio-5558, ¶ 22-25. Because the court of appeals determined that appellants never argued an as-applied challenge during the administrative process, it held that the issues had been waived, and the trial court erred in vacating the violations.

Appellants counter that the issues were properly raised as facial challenges and that they did not need to exhaust administrative remedies.

### 1. The As-Applied v. Facial Constitutional Challenge

{¶ 20} Like statutes and ordinances, administrative rules may be constitutionally challenged on their face or as applied. *Jones v. Chagrin Falls*, 77 Ohio St.3d 456, 674 N.E.2d 1388 (1997). The distinction between the two types of constitutional challenges is important. For example, the standard of proof depends upon which type of challenge is being made. *See State ex rel. Ohio Congress of Parents & Teachers v. State Bd. of Edn.*, 111 Ohio St.3d 568, 2006-Ohio-5512, 857 N.E.2d 1148, ¶ 21 (a facial constitutional challenge requires proof beyond a reasonable doubt, whereas an as-applied challenge requires clear and convincing evidence). More relevant to this case, however, is that parties advancing an as-applied challenge must raise that challenge at the first available opportunity, and failure to do so results in waiver. They need not do so if arguing a facial challenge. *South-Western City Schools Bd. of Edn. v. Kinney*, 24 Ohio St.3d 184, 494 N.E.2d 1109 (1986), syllabus; *Reading v. Pub. Util. Comm.*, 109 Ohio St.3d 193, 2006-Ohio-2181, 846 N.E.2d 840, ¶ 16 (facial constitutional challenge may be raised for the first time in appeal from administrative agency, but as-applied constitutional challenge must be raised first in the agency to allow the parties to develop an evidentiary record).

{¶ 21} A facial challenge alleges that a statute, ordinance, or administrative rule, on its face and under all circumstances, has no rational relationship to a legitimate governmental purpose. *Jaylin Invests., Inc. v. Moreland Hills*, 107 Ohio St.3d 339, 2006-Ohio-4, 839 N.E.2d 903, ¶ 11. Facial challenges to the constitutionality of a statute are the most difficult to mount successfully, since the challenger must establish that no set of circumstances exists under which the act would be valid. *United States v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). If a statute is unconstitutional

on its face, the statute may not be enforced under any circumstances. When determining whether a law is facially invalid, a court must be careful not to exceed the statute's actual language and speculate about hypothetical or imaginary cases. *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450, 128 S.Ct. 1184, 170 L.Ed.2d 151 (2008). Reference to extrinsic facts is not required to resolve a facial challenge. *Reading* at ¶ 15.

{¶ 22} A party raising an as-applied constitutional challenge, on the other hand, alleges that "the 'application of the statute in the particular context in which he has acted, or in which he proposes to act, would be unconstitutional. The practical effect of holding a statute unconstitutional "as applied" is to prevent its future application in a similar context, but not to render it utterly inoperative.' " *Yajnik v. Akron Dept. of Health, Hous. Div.*, 101 Ohio St.3d 106, 2004-Ohio-357, 802 N.E.2d 632, ¶ 14, quoting *Ada v. Guam Soc. of Obstetricians & Gynecologists*, 506 U.S. 1011, 113 S.Ct. 633, 121 L.Ed.2d 564 (1992) (Scalia, J., dissenting). Because an as-applied challenge depends upon a particular set of facts, this type of constitutional challenge to a rule must be raised before the administrative agency to develop the necessary factual record. *Reading* at ¶ 13.

**2. Appellants' Separation-of-Powers Proposition—An As-Applied Constitutional Challenge**

{¶ 23} In their first proposition of law, appellants allege that ODH's method of enforcing the smoking ban violates the separation of powers and is therefore unconstitutional. They argue that this is a facial challenge. We disagree.

{¶ 24} R.C. 3794.02(A) provides that no proprietor shall permit smoking in a public place or place of employment. In accordance with that statutory provision, ODH adopted Ohio Adm.Code 3701-52-02(B), requiring a proprietor to take "reasonable steps including, but not limited to, requesting individuals to cease smoking, to ensure that tobacco smoke, in an area directly or indirectly

under the control of the proprietor, does not enter any area in which smoking is prohibited." Appellants contend that ODH, in its efforts to enforce this regulation, has adopted an unwritten policy of strict liability. In other words, if an investigator sees smoking in a public place or place of employment covered by the Smoke Free Act, the proprietor is automatically charged with violating R.C. 3794.02 regardless of the steps the proprietor has taken to comply with the act. Appellants contend that the adoption of a policy of strict liability exceeds the statutory authority granted to ODH, thereby usurping the legislative function and violating the separation of powers.

{¶ 25} The resolution of this proposition, however, depends upon the particular set of facts and circumstances surrounding each of the ten separate violations. Due to the unwritten nature of the alleged strict-liability policy, extrinsic evidence is required to prove that the policy existed and that ODH investigators implemented it when conducting their investigations into the ten complaints. Thus, appellants are raising an as-applied challenge on separation-of-powers grounds.

{¶ 26} Nevertheless, we agree with the court of appeals that the trial court should not have entertained this as-applied challenge to the ten past violations. Appellants had the opportunity to request an administrative hearing in which they could have developed a record to show that ODH's investigators used a strict-liability approach. See Ohio Adm.Code 3701-52-08(F) and (G); R.C. 3794.09. Because appellants failed to request an administrative hearing for eight of their violations and because they failed to prosecute the two administrative appeals they did request, appellants did not raise any constitutional challenge regarding any of its ten violations. Therefore, appellants failed to exhaust their administrative remedies, and this constitutional issue is not properly before the court.

11

### 3. Appellants' Police-Power and Takings Proposition—An As-Applied Constitutional Challenge

{¶ 27} In their second proposition of law, appellants assert that their inclusion as proprietors subject to the Smoke Free Act exceeds the outer limits of the state's police power and unreasonably extinguishes property rights. Additionally, they argue that prohibiting smoking in an adults-only liquor-licensed establishment, such as Zeno's, is unduly oppressive and amounts to a taking. It is clear that this is an as-applied challenge. Appellants are not contending that there is no set of circumstances under which the Smoke Free Act would be valid. Again, appellants are contending that, as applied to their particular circumstances, R.C. 3794.02 is unfair and unconstitutional.

{¶ 28} Appellants acknowledge that this second proposition of law raises an as-applied challenge but nonetheless urge this court to adopt their arguments and invalidate the ten violations. However, as discussed above, because appellants did not raise this as-applied constitutional challenge in an administrative review, they failed to exhaust their administrative remedies, and this challenge is not properly before the court.

### B. *Declaratory Judgment—Collateral Attack or Alternate Remedy*

{¶ 29} In response to ODH's complaint, appellants filed a counterclaim and cross-claim requesting declaratory judgment. The Tenth District held that the declaratory judgment was an as-applied challenge to the Smoke Free Act and was an improper means to collaterally attack the ten final orders finding violations. 2010-Ohio-5558, ¶ 36. Appellants argue that the appellate court interpreted their request for relief as addressing only the past ten violations. Appellants contend that this characterization ignored the prospective aspect of their request for declaratory relief, i.e., their request to prevent ODH from continuing to apply its unwritten policy of strict liability.

{¶ 30} Declaratory judgment is available to challenge the constitutionality of an administrative rule or policy. *Karches v. Cincinnati,* 38 Ohio St.3d 12, 526 N.E.2d 1350 (1988). But it may not be used to review administrative proceedings. *Driscoll v. Austintown Assoc.*, 42 Ohio St.2d 263, 271, 328 N.E.2d 395 (1975) ("the declaratory judgment action is independent from the administrative proceedings; it is not a review of the final administrative order").

{¶ 31} The three essential elements for declaratory relief are that (1) a real controversy exists between the parties, (2) the controversy is justiciable in character, and (3) speedy relief is necessary to preserve the rights of the parties. *Burger Brewing Co. v. Liquor Control Comm.,* 34 Ohio St.2d 93, 97, 296 N.E.2d 261 (1973), citing *Am. Life & Acc. Ins. Co. v. Jones*, 152 Ohio St. 287, 296, 89 N.E.2d 301 (1949).

{¶ 32} Although the existence of another adequate remedy does not preclude an action for declaratory judgment, Civ.R. 57, we have also indicated that a party must exhaust an available administrative remedy before instituting a declaratory judgment action challenging the constitutionality of an administrative regulation as applied. *Driscoll* at 273-274. We further stated,

> This court has recognized at least two situations in which exhaustion of administrative remedies is not required prior to filing a declaratory judgment action challenging the constitutionality of zoning. One, of course, is the situation in which there is no administrative remedy available which could provide the relief sought. *Kaufman v. Newburgh Heights*, [26 Ohio St.2d 217, 271 N.E.2d 280 (1971)]. The other is the situation in which the administrative remedy is unnecessarily onerous. *Burt Realty Corp. v. Columbus,* [21 Ohio St.2d 265, 257 N.E.2d 355 (1970)].

*Driscoll* at 275.

### 1. The Ten Orders Finding Violations Are Final

{¶ 33} Appellants argue that an administrative appeal would have been futile and costly, and therefore they were not required to exhaust their administrative remedies before seeking a declaratory judgment on the constitutionality of the Smoke Free Act. But nothing in the record suggests that the administrative process under the Smoke Free Act is unduly burdensome or costly. The act provides proprietors, like appellants, several opportunities to contest a reported violation. A proprietor may submit a written statement or evidence after receiving a written notice of an alleged violation. Ohio Adm.Code 3701-52-08(F). During an on-site visit by an investigator, a proprietor may demonstrate compliance with the act. A sanitary and program administrator for ODH testified that if no violations are observed during the investigation, the complaint against the proprietor would be dismissed. If the investigation results in proposed findings of violation and a civil fine, a proprietor will be afforded the opportunity to submit additional evidence. Ohio Adm.Code 3701-52-08(F)(1). Certain repeat violators will be afforded the opportunity to request administrative review of the proposed findings, during which they may present evidence and cross-examine witnesses. Ohio Adm.Code 3701-52-08(F)(2) and (F)(2)(a)(iv). If the hearing report goes against the proprietor, the proprietor may object to ODH. Ohio Adm.Code 3701-52-08(F)(2)(a)(vi). At any of these stages, given a proper challenge to the method of enforcing R.C. 3794.02, ODH could have found that there was insufficient evidence of a violation and dismissed the complaints against appellants. Therefore, an administrative remedy was available.

{¶ 34} Appellants also argue that pursuant to *Johnson's Island, Inc. v. Danbury Twp. Bd. of Trustees*, 69 Ohio St.2d 241, 431 N.E.2d 672 (1982), exhaustion of administrative remedies is not required when the constitutionality of a statute is raised as a defense in a proceeding brought to enforce the statute.

However, the original enforcement of the Smoke Free Act against appellants occurred when the Columbus City Health Department, ODH's designee, issued the ten proposed findings of violation and civil fine. These orders became final when they were not challenged on appeal, and the time for appeal has passed. Collateral attacks of final judgments are disfavored and succeed only in limited situations—fraud or lack of jurisdiction. *Ohio Pyro, Inc. v. Ohio Dept. of Commerce*, 115 Ohio St.3d 375, 2007-Ohio-5024, 875 N.E.2d 550, ¶ 22-23. Because appellants do not argue either fraud or lack of jurisdiction, their attempt to invalidate the ten violations through a declaratory judgment action is an improper collateral attack.

### 2. Future Application of Smoke Free Act to Zeno's

{¶ 35} Although appellants are foreclosed from challenging the violations already issued, we agree with appellants that their declaratory judgment/injunction action also sought to prevent future enforcement of the Smoke Free Act. Appellants raised an as-applied challenge and, therefore, must prove by clear and convincing evidence that future enforcement of the act would violate their constitutional rights.

{¶ 36} As an initial matter, we note that the Smoke Free Act was passed as a ballot initiative by Ohio voters. The Ohio Constitution, Article II, Section 1, provides,

> The legislative power of the state shall be vested in a general assembly consisting of a senate and house of representatives but the people reserve to themselves the power to propose to the general assembly laws and amendments to the constitution, and to adopt or reject the same at the polls on a referendum vote as hereinafter provided. * * * The limitations expressed in the constitution, on the power of the general assembly

to enact laws, shall be deemed limitations on the power of the people to enact laws.

**{¶ 37}** Therefore, the same constitutional challenges that would invalidate legislation enacted by the General Assembly would also invalidate laws passed by ballot initiative.

### a. Unlawful Enforcement of the Smoke Free Act

**{¶ 38}** In their counterclaim, appellants requested that ODH be enjoined from unlawful enforcement of R.C. Chapter 3794. Specifically, they contended that ODH's policy of strict liability—where there's smoke, there's a violation—exceeds the authority R.C. Chapter 3794 grants to ODH.

**{¶ 39}** A rule adopted by an administrative agency is "valid and enforceable unless unreasonable or in conflict with the statutory enactment covering the same subject matter." *Amoco Oil Co. v. Petroleum Underground Storage Tank Release Comp. Bd.*, 89 Ohio St.3d 477, 484, 733 N.E.2d 592 (2000). In this respect, "an administrative rule cannot add [to] or subtract from the legislative enactment." *Id*.

**{¶ 40}** In ruling in favor of appellants, the trial court found that the following facts had been brought forward at trial:

(1) The Department of Health has in the past implemented a policy of strict liability for violations of the SmokeFree Act in regards to property owners such as [appellants]; (2) In the case of [appellants,] the Department of Health implemented this policy and cited [appellants] for violations of the SmokeFree Act without regard to whether [appellants] were actually permitting smoking to occur on the premises of Zeno's; (3) If a complaint was filed and the Department of Health found someone smoking at Zeno's,

16

[appellants] were fined; (4) The Department of Health has never once fined an individual for smoking in a public place; and (5) [appellants] posted "no smoking" signs in Zeno's, removed all ashtrays from Zeno's, and would regularly ask patrons who were smoking on the premises to put out their cigarette or take it outside.

**{¶ 41}** The trial court's first finding may have been based in part on the Tenth District's decision in *Pour House, Inc. v. Ohio Dept. of Health*, 185 Ohio App.3d 680, 2009-Ohio-5475, 925 N.E.2d 621 (10th Dist.). In that case, a bar in Toledo had been cited by the Toledo-Lucas County Health Department for violating the Smoke Free Act. The hearing examiner concluded that the proprietor's evidence of good-faith efforts to comply with the act, though credible, was unavailing, because R.C. 3794.02 imposes strict liability. The court of appeals in *Pour House* stated,

> The question before us is the meaning of the phrase "permit smoking" [in R.C. 3794.02(A)]. Does this phrase mean that the statute is violated if smoking occurs in a prohibited place, regardless of the measures taken by the proprietor to prevent it? Or does this phrase mean that the statute is violated only if the proprietor affirmatively allows smoking in a prohibited place, or implicitly allows smoking by failing to take reasonable measures to prevent it?

*Id.* at ¶ 15. The appellate court determined that a violation of R.C. 3794.02(A) occurs only when the proprietor permits smoking. "A proprietor permits smoking when the proprietor affirmatively allows smoking or implicitly allows smoking by

failing to take reasonable measures to prevent patrons from smoking * * *." *Id*. at ¶ 18.

**{¶ 42}** In *Pour House*, ODH had argued that once it proved that smoking had occurred, the burden shifted to the proprietor to prove that it had not permitted smoking. The Tenth District rejected that argument, stating, "Permitting smoking is an element of the smoking violation; the opposite is not an affirmative defense." *Id*. at ¶ 20. The appellate court remanded the case to the Franklin County Court of Common Pleas with instructions to remand to the hearing examiner to determine whether the bar had violated the Smoke Free Act. *Id*. at ¶ 22.

**{¶ 43}** The Tenth District's decision in *Pour House*, however, does not establish that ODH has engaged in a widespread policy of strict liability in investigating and citing proprietors for violations of the Smoke Free Act. Nor does the evidence in this case, contrary to the trial court's finding.

**{¶ 44}** A sanitary and program administrator for ODH testified that the determination of whether a proprietor is permitting smoking is conducted on a case-by-case basis. Appellants' main contention is that investigators never inquired of appellants' employees whether they had taken steps to prevent smoking in prohibited areas. The smoking enforcement coordinator for the city of Columbus, however, testified that when he observed a patron smoking at Zeno's, he would on occasion speak with the employees and that none had told him that they had asked the patron to stop smoking.

**{¶ 45}** Substantial evidence exists that appellants at least implicitly permitted smoking. For instance, on August 6, 2007, a Columbus City Health Department investigator witnessed two people smoking at Zeno's and observed cigarette butts in plastic cups filled halfway with water. On November 29, 2007, another investigator found multiple Zeno's patrons who were smoking and who were using partially filled plastic cups as ashtrays. Although appellant Richard

Allen was present at the time, the investigator did not witness him addressing any of the smoking patrons. On November 6, 2008, a third investigator witnessed at least eight patrons smoking and using small plastic cups as ashtrays.

**{¶ 46}** The trial court also ignored the fact that appellants were cited nine times for allowing ashtrays to be present. Although the "ashtrays" used were plastic cups filled with water, R.C. 3794.06(B) requires proprietors to remove all ashtrays and "other receptacles used for disposing of smoking materials" from any area where smoking is prohibited.

**{¶ 47}** Finally, in eight of the violations, the investigator determined that the violation was intentional and doubled the fine. The court of appeals agreed:

> On this record, the evidence is overwhelming that Bartec repeatedly and intentionally violated the Smoke Free Act, failed to comply with its provisions as R.C. 3794.09(D) requires, and in so doing exposed patrons and employees to the very harm the statute is designed to prevent. Due to the hearing the court conducted and the evidence adduced as a result of the hearing, the trial court could reach no other conclusion.

*Jackson*, 2010-Ohio-5558, at ¶ 33.

**{¶ 48}** We therefore conclude that appellants have failed to establish that appellants will be subject to an unlawful policy of strict liability.

### b. The Smoke Free Act Does Not Unreasonably Interfere with Property Rights or Amount to a Taking

**{¶ 49}** The Ohio Constitution, Article I, Section 19, provides, "Private property shall ever be held inviolate, but subservient to the public welfare." Appellants present a two-fold argument that the inclusion of Zeno's within the Smoke Free Act is unconstitutional. First, they contend that the act exceeds the

limits of the state's police powers.  Second, appellants argue that the act amounts to a taking without compensation.  We disagree with both arguments.

*1. Valid Exercise of Police Power*

**{¶ 50}** The fundamental nature of property rights in Ohio was recently reaffirmed.  *Norwood v. Horney*, 110 Ohio St.3d 353, 2006-Ohio-3799, 853 N.E.2d 1115, ¶ 38.  But it has also long been established that the guarantees of the Ohio Constitution are subject to a reasonable, nonarbitrary exercise of the police power of the state or municipality, when exercised in the interest of public health, safety, morals, or welfare.  *Yajnik*, 101 Ohio St.3d 106, 2004-Ohio-357, 802 N.E.2d 632, ¶ 16.  In *Olds v. Klotz*, 131 Ohio St. 447, 3 N.E.2d 371 (1936), we noted,

> The exercise of the police power is inherent in government and essential to its existence and inevitably comes into conflict with the constitutional guaranties of the right of property and liberty of contract.  In each case presented the court must draw the line of demarcation. Courts do not attempt to define police power with exactness, and inevitably the individual case must stand upon its own footing.

*Id*. at 451.  Whether a statute is "truly in the public welfare within the meaning of Section 19, and thus superior to private property rights, [the] legislation must be reasonable, not arbitrary, and must confer upon the public a benefit commensurate with its burdens upon private property."  *Direct Plumbing Supply Co. v. Dayton*, 138 Ohio St. 540, 546, 38 N.E.2d 70 (1941).  A court will not invalidate the judgment of the General Assembly as to whether an exercise of the police power bears a real and substantial relation to the public health, safety, morals, or general welfare of the public unless that judgment appears to be clearly erroneous.

*Benjamin v. Columbus*, 167 Ohio St. 103, 146 N.E.2d 854 (1957), paragraph six of the syllabus. We believe that the same holds true for legislation passed by Ohio voters pursuant to a ballot initiative.

{¶ 51} We have previously stated that the General Assembly has the authority to enact a public-smoking ban. *D.A.B.E., Inc. v. Toledo-Lucas Cty. Bd. of Health*, 96 Ohio St.3d 250, 2002-Ohio-4172, 773 N.E.2d 536, ¶ 54 ("Within its constitutional grant of powers, the General Assembly possesses both the authority to enact smoking legislation such as the regulation at issue and the prerogative to delegate that authority to local boards of health"). Although the Smoke Free Act was ultimately passed pursuant to a ballot initiative, the voters of Ohio also have a legitimate purpose in protecting the general welfare and health of Ohio citizens and the workforce from the dangers of secondhand smoke in enclosed public places. By requiring that proprietors of public places and places of employment take reasonable steps to prevent smoking on their premises by posting "no smoking" signs, removing ashtrays, and requesting patrons to stop smoking, the act is rationally related to its stated objective. Although appellants complain that the Smoke Free Act is not being enforced against actual smokers themselves, the evidence establishes that ODH has not received a complaint against an individual smoker. The trial court may have also questioned how much a property owner can do, but the evidence also establishes that during their on-site visits, the investigators did not witness appellants or their employees asking patrons to stop smoking or removing the makeshift ashtrays being used. It is not unreasonable or arbitrary to hold responsible the proprietors of public places and places of employment for their failure to comply with the Smoke Free Act.

{¶ 52} Appellants would have us limit the police power to simply abating public nuisances. Although the "state may use its police power to enjoin a property owner from activities akin to public nuisances without offending either the Due Process or Takings Clause," *State ex rel. Pizza v. Rezcallah*, 84 Ohio

St.3d 116, 125, 702 N.E.2d 81 (1998), we have not expressly limited the police power to nuisance and decline to do so.

> "The police power is inherent in sovereignty; and its exercise is justified by the necessity of the occasion. Its foundation is the right and duty of the government to provide for the common welfare of the governed. It is tersely expressed in the maxim, '*salus populi suprema lex*.'[5] While, therefore, a broad discretion is given to the Legislature to provide for the general welfare, it necessarily is not an arbitrary or unlimited discretion * * *."

(Footnote added.) *State v. Martin*, 168 Ohio St. 37, 40, 151 N.E.2d 7 (1958), quoting *State v. Boone*, 84 Ohio St. 346, 351, 95 N.E. 924 (1911). In R.C. 3794.04, the state declared the necessity for regulating smoking in public places and places of employment. Our review of the act leads us to conclude that it is neither unduly oppressive nor arbitrary in its restrictions. Appellants' own witness testified that most patrons who are asked to stop smoking readily do so.

{¶ 53} We therefore hold that the Smoke Free Act is a valid exercise of the state's police power by Ohio's voters.

### 2. *The Smoke Free Act Does Not Amount to a Taking*

{¶ 54} Appellants contend that the Smoke Free Act is unconstitutional because it effects a regulatory taking without just compensation. Specifically, appellants argue that R.C. Chapter 3794 confiscates a proprietor's control over its indoor air. But the standard to be used depends on the type of regulatory taking involved:

---

5. This phrase has been translated as "[t]he safety of the people is the supreme law." Black's Law Dictionary 1870 (9th Ed.2009).

Two types of regulatory actions will be deemed to be per se takings for Fifth Amendment purposes: first, those government actions that cause an owner to suffer a permanent physical invasion of property, see *Loretto v. Teleprompter Manhattan CATV Corp.* (1982), 458 U.S. 419, 435-440, 102 S.Ct. 3164, 73 L.Ed.2d 868 (state law requiring landlords to permit cable companies to install cable facilities in apartment buildings effected a taking); and second, government regulations that completely deprive an owner of "*all* economically beneficial uses" of the property. (Emphasis sic.) *Lucas v. South Carolina Coastal Council* (1992), 505 U.S. 1003, 1019, 112 S.Ct. 2886, 120 L.Ed.2d 798. A *Lucas* taking is also known as a categorical, or total, taking, and in such a case, the government must pay just compensation for the total property taken except to the extent that "background principles of nuisance and property law" independently restrict the owner's intended use of the property. Id. at 1030. " 'Outside these two relatively narrow categories (and the special context of land-use exactions * * *), regulatory takings challenges are governed by the standards set forth in *Penn Cent. Transp. Co. v. New York City*, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978).' " *Lingle v. Chevron U.S.A., Inc.* (2005), 544 U.S. 528, 538, 125 S.Ct. 2074, 161 L.Ed.2d 876.

(Footnote omitted.) *State ex rel. Shelly Materials, Inc. v. Clark Cty. Bd. of Commrs.*, 115 Ohio St.3d 337, 2007-Ohio-5022, 875 N.E.2d 59, ¶ 18. Because there is no physical invasion of appellants' property and there is no claim that the Smoke Free Act deprives appellants of all economically beneficial uses of their

property, the only possible taking involved is a partial regulatory taking under *Penn Cent.*

{¶ 55} With a *Penn Cent.* regulatory taking, a court engages in a factual inquiry of the following three factors: "(1) the economic impact of the regulation on the claimant, (2) the extent to which the regulation has interfered with distinct investment-backed expectations, and (3) the character of the governmental action." *Shelly Materials* at ¶ 19, citing *Penn Cent.,* 438 U.S. at 124, 98 S.Ct. 2646, 57 L.Ed.2d 631.

{¶ 56} Appellants submitted evidence that their gross sales declined in 2009, but the Smoke Free Act became effective in December 2006, and in 2007 and 2008, appellants' gross sales actually increased. Furthermore, Columbus's smoking ban, found at Columbus Code of Ordinances Chapter 715, is very similar to R.C. Chapter 3794 and went into effect in January 2005. Still, appellants' gross sales increased in 2005 and 2006. Thus, appellants have failed to demonstrate that the Smoke Free Act has had a significant economic impact on their business.

{¶ 57} The second and third factors also do not support finding a taking in this case. As the United States Supreme Court noted in *Penn Cent.*:

> "Government hardly could go on if to some extent values incident to property could not be diminished without paying for every such change in the general law," *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 413 [43 S.Ct. 158, 67 L.Ed. 322] (1922), and this Court has accordingly recognized, in a wide variety of contexts, that government may execute laws or programs that adversely affect recognized economic values. Exercises of the taxing power are one obvious example. A second are the decisions in which this Court has dismissed "taking" challenges on the

ground that, while the challenged government action caused economic harm, it did not interfere with interests that were sufficiently bound up with the reasonable expectations of the claimant to constitute "property" for Fifth Amendment purposes.

*Penn Cent.* at 124-125. The "taking" of appellants' indoor air space is not the type of taking contemplated by either the Fifth Amendment to the United States Constitution or the Ohio Constitution, Article I, Section 19. Appellants have also failed to demonstrate that the Smoke Free Act interfered with a distinct investment-backed expectation. The goal of this legislation is to protect the health of the workers and other citizens of Ohio. R.C. 3794.04. It does so by regulating proprietors of public places and places of employment in a minimally invasive way. We therefore hold that the Smoke Free Act does not constitute a taking.

III. Conclusion

{¶ 58} Because appellants failed to exhaust their administrative remedies and may not use declaratory judgment as a collateral attack on a final judgment, the ten previous violations of the Smoke Free Act are res judicata. We also hold that the Smoke Free Act is a valid exercise of the state's police power by Ohio voters and does not amount to a regulatory taking. The judgment of the court of appeals is affirmed.

Judgment affirmed.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, CUPP, and MCGEE BROWN, JJ., concur.

O'DONNELL, J., concurs in judgment only.

————————————

Michael DeWine, Attorney General, Alexandra T. Schimmer, Solicitor General, Elisabeth A. Long, Deputy Solicitor, and Stacy Hannan, Robert

Moormann, and Angela M. Sullivan, Assistant Attorneys General, for appellees Theodore E. Wymsylo and Michael DeWine.

Maurice A. Thompson, for appellants.

Law Office of Joseph C. Lucas, L.L.C., and Tyler W. Kahler, urging reversal for amici curiae Ohio Licensed Beverage Association, Buckeye Liquor Permit Holders Association, and Dr. Michael L. Marlow.

Finney, Stagnaro, Saba & Patterson Co., L.P.A., and Christopher P. Finney; and Law Firm of Curt C. Hartman and Curt C. Hartman, urging reversal for amici curiae Ohio Liberty Council, Ohio Freedom Alliance, and Coalition Opposed to Additional Spending & Taxes.

Ron O'Brien, Franklin County Prosecuting Attorney, and Tracie M. Boyd, Assistant Prosecuting Attorney, urging affirmance for amicus curiae Franklin County District Board of Health.

McTigue & McGinnis, L.L.C., Donald J. McTigue, Mark A. McGinnis, and J. Corey Colombo, urging affirmance for amici curiae American Cancer Society, East Central Division; American Cancer Society Cancer Action Network; Academy of Medicine of Cleveland & Northern Ohio; American Heart Association, Great Rivers Affiliate; American Lung Association of the Midland States; American Medical Association; Americans for Nonsmokers' Rights; Association of Ohio Health Commissioners, Inc.; Campaign for Tobacco-Free Kids; Cleveland Clinic; Ohio Asthma Coalition; Ohio Chapter of the American College of Cardiology; Ohio Osteopathic Association; Ohio State Medical Association; and Tobacco Control Legal Consortium.

_____